# United States Court of Appeals
## For the Eighth Circuit

———————————————

### No. 12-3724

———————————————

Steven E. Hammer, individually and on behalf of all others similarly situated;
Michael D. White, individually and on behalf of all others similary situated

*Plaintiffs - Appellants*

United States of America

*Intervenor*

v.

Sam's East, Inc., doing business as Sam's Club; Does, 1-10, inclusive; Sam's West,
Inc., doing business as Sam's Club; Wal-Mart Stores, Inc., individually, doing
business as Sam's Club, doing business as Sam's Wholesale Club; Does, 1-8, inclusive

*Defendants - Appellees*

———————————————

### No. 12-3858

———————————————

Steven E. Hammer, individually and on behalf of all others similarly situated;
Michael D. White, individually and on behalf of all others similary situated

*Plaintiffs - Appellees*

United States of America

*Intervenor*

v.

Sam's East, Inc., doing business as Sam's Club

*Defendant - Appellant*

Does, 1-10, inclusive

*Defendant*

Sam's West, Inc., doing business as Sam's Club; Wal-Mart Stores, Inc., individually, doing business as Sam's Club, doing business as Sam's Wholesale Club

*Defendants - Appellants*

Does, 1-8, inclusive

*Defendant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: September 25, 2013
Filed: June 5, 2014

_____

Before RILEY, Chief Judge, BRIGHT and BYE, Circuit Judges.

_____

BRIGHT, Circuit Judge.

In this action, plaintiffs (appellants) Steven Hammer and Michael White allege that Wal-Mart Stores, Inc., Sam's East, Inc., and Sam's West, Inc. (collectively

"Sam's Club")[1] willfully violated a provision of the Fair and Accurate Credit Transactions Act (FACTA), 15 U.S.C. § 1681c(g)(1), which prohibits a person accepting credit or debit cards for a consumer transaction from "print[ing] more than the last five digits of the card number . . . upon any receipt provided to the cardholder." Despite its conclusion that Sam's Club violated FACTA, the district court[2] granted summary judgment of dismissal in favor of Sam's Club on the ground that the violation was not willful. We agree, and therefore affirm.

## I.    Background

Sam's Club, a membership-only retailer, requires customers to have a membership card and number in order to shop at a Sam's Club store. Sam's Club members may also apply for a Sam's Club Private Label Credit Card, which doubles as a membership card and a credit card. The card has a 19-digit credit card number. The first seven digits comprise the Bank Identification Number, which identifies the banking institution issuing the card, and is identical on all cards and publicly available. Eleven of the remaining twelve digits are unique to the credit card holder. It is undisputed that prior to the initiation of this action, Sam's Club designed its Private Label Credit Cards such that the last twelve digits of that card number read identical to the last twelve digits of the cardholder's membership number.

The appellants hold Sam's Club Private Label Credit Cards. On multiple occasions from 2007-2008, they purchased products at Sam's Club stores in Kansas and Missouri using their cards and were given electronically-printed receipts at the

[1]Hammer was the sole named plaintiff in the original complaint. Hammer subsequently filed an amended complaint adding White as a named plaintiff and Wal-Mart Stores, Inc., and Sam's West, Inc., as defendants.

[2]The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

point of sale. The receipts disclosed only the last four digits of appellants' credit card numbers; however, the receipts also showed separately the last ten consecutive digits of their membership numbers. Thus, given that Sam's Club designed the last twelve digits of membership and credit card numbers to be the same, the receipts showing the appellants' "member" number in fact disclosed the last 10 consecutive digits of appellants' credit card numbers.

The following example illustrates how the receipts disclosed the appellants' membership numbers ("V Member") and credit card numbers ("Account #"):

V Member:  101-0**0123456789**
Account #:  6789

In this example, the bold numbers comprise the last ten digits of the consumer's credit card number.

Appellants subsequently filed this action on behalf of themselves and others similarly situated asserting that Sam's Club in its receipts provided to consumers with Private Label Credit Cards violated FACTA's receipt limitation requirement, 15 U.S.C. § 1681c(g)(1), reading:

> [N]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.

Appellants allege that Sam's Club violated this statute by printing more than the last five digits of their credit card numbers on electronically-printed receipts despite the fact that receipts listed the numbers as "member" numbers. Appellants further allege that the violation was willful because Sam's Club persisted in printing credit card numbers on receipts despite knowing and repeatedly being informed about

FACTA's receipt requirement. Appellants do not allege actual damages, but seek to recover statutory damages under a provision of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681n, which governs liability for FACTA violations. That provision states:

> Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of . . . any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000.

15 U.S.C. § 1681n(a)(1)(A) (hereinafter "the FCRA liability provision"). Appellants also seek punitive damages and reasonable attorneys' fees.

After the district court denied Sam's Club's motion to dismiss under Fed. R. Civ. P. 12(b)(6), appellants moved for summary judgment on the issue of whether Sam's Club violated FACTA's receipt requirement by printing receipts with membership numbers that included more than five digits of customers' credit card numbers. The district court granted the motion, reasoning that "one cannot avoid the prohibition by referring on the receipt to a 'membership number' if in fact the collection of numbers includes a long string of more than five digits that are also used as credit card numbers." (July 24, 2012, Order at 2.) Although the district court concluded that Sam's Club violated FACTA, it reserved for consideration the issue of whether the violation was willful—a statutory precondition to liability.

Sam's Club then moved for summary judgment on the issue of willfulness. The district court granted the motion and dismissed appellants' action. Relying on the Supreme Court's decision in *Safeco Ins. Co. v. Burr*, 551 U.S. 47 (2007), the district court concluded that although Sam's Club violated FACTA, the violation was not willful because Sam's Club's interpretation of the statute was not objectively unreasonable. The district court reasoned that Sam's Club's reading of the

statute—that the language of the statute only related to shortening of a credit card number, so labeled—"not only seems reasonably possible but rather likely, at least for those not philosophically inclined to think about (or guess at) Congressional purpose." (Oct. 16, 2012, Order at 6.) The district court also emphasized that Sam's Club had "no guidance except the bare wording of the statute in determining whether a 'membership number' as well as a 'credit card' or 'account' number must be truncated." (*Id.*)

Appellants filed a timely notice of appeal to this court.

## II. Discussion

Appellants assert (1) that the district court erred by concluding that Sam's Club did not willfully violate FACTA and (2) that the district judge failed to recuse himself in the case after disclosure of a conflict of interest. On cross appeal, Sam's Club challenges the district court's conclusion that it violated FACTA. Sam's Club also argues that appellants lack Article III standing to bring their claim. We address standing before proceeding to the merits.

### A. Article III Standing

"Article III standing is a threshold question in every federal court case." *United States v. One Lincoln Navigator 1998*, 328 F.3d 1011, 1013 (8th Cir. 2003). "The exercise of judicial power under Art. III of the Constitution depends on the existence of a case or controversy." *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975). A central component of the "case or controversy" requirement is standing, "which requires a plaintiff to demonstrate the now-familiar elements of injury in fact, causation, and redressability." *Lance v. Coffman*, 549 U.S. 437, 439 (2007).

With these principles in mind, we requested supplemental briefing from the parties prior to oral argument on the following issues: (1) whether the appellants, having alleged no actual damages, "have suffered an 'injury in fact,'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), and (2) whether the appellants have suffered an injury "that is likely to be redressed by a favorable decision," *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38 (1976), in light of dicta from our decision in *Dowell v. Wells Fargo Bank, NA*, 517 F.3d 1024, 1026 (8th Cir. 2008) ("It does not necessarily follow from [the FCRA liability provision] that statutory damages are available where a plaintiff fails to prove actual damages.").

The parties submitted briefs on the above issues in which they took opposing positions. Appellants Hammer and White argue that Congress may create legal rights via statute, the invasion of which creates standing to sue. Here, they assert, by enacting 15 U.S.C. § 1681n(a)(1)(A), Congress created a statutory right to receive receipts that disclose no more than the last five digits of the cardholder's credit card number. Thus, appellants argue that they suffered an injury-in-fact as a result of Sam's Club's statutory violation sufficient to confer standing. In opposition, Sam's Club contends that "[t]he mere fact of a statutory violation, disconnected from any real-world impact" does not suffice to confer Article III standing. Thus, Sam's Club argues that appellants cannot maintain standing absent some showing of actual damages. Sam's Club also encourages us to interpret the FCRA liability provision as requiring some proof of actual damages as a precondition to recovering actual *or* statutory damages in order to "avoid serious Article III concerns."

After oral argument, the United States filed a motion to intervene in the proceedings to file a supplemental brief on the two standing questions that we had posed to the parties. *See* 28 U.S.C. 2403(a) (permitting the United States to intervene for argument on the question of constitutionality "[i]n any action, suit or proceeding in a court of the United States . . . wherein the constitutionality of any Act of Congress affecting the public interest is drawn in question"). We granted the motion

and the United States subsequently filed a brief taking the position that appellants maintain Article III standing to bring their action.

After considering the parties' submissions, we conclude that appellants do have standing to bring their claim.

### i.      *Injury-in-fact*

It is well established that "[t]he actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Warth v. Seldin*, 422 U.S. 490, 500 (1975) (citation omitted) (internal quotation marks omitted); *see also Charvat v. Mut. First Fed. Credit Union*, 725 F.3d 819, 822 (8th Cir. 2013). Notably, this language is without limitation: the actual-injury requirement may be satisfied *solely* by the invasion of a legal right that Congress *created*. This is not a novel principle within the law of standing.[3]

---

[3]*See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-74 (1982) (holding that an individual who receives false information in violation of section 804(d) of the Fair Housing Act has standing to bring a claim regardless of whether the violation results in actual injury to the individual); *Edwards v. First Am. Corp.*, 610 F.3d 514, 517 (9th Cir. 2010) (holding that Real Estate Settlement Procedures Act granted plaintiff certain rights to judicial relief sufficient to confer Article III standing even though the plaintiff did not suffer actual damages); *Robey v. Shapiro, Marianos & Cejda, L.L.C.*, 434 F.3d 1208, 1211 (10th Cir. 2006) ("Congress may expand the range or scope of injuries that are cognizable for purposes of Article III standing by enacting statutes which create legal rights."); *FMC Corp. v. Boesky*, 852 F.2d 981, 993 (7th Cir. 1988) (concluding that the plaintiff sufficiently alleged the violation of a state-law right "that *in itself* would suffice to satisfy Article III's injury requirement" even in the absence of a specific finding of actual injury (emphasis added)); *Dryden v. Lou Budke's Arrow Fin. Co.*, 630 F.2d 641, 647 (8th Cir. 1980) (explaining that claimants "need not show that they sustained actual damages stemming from the [Truth in Lending Act] violations proved before they may recover the statutory damages the Act also provides for").

By enacting 15 U.S.C. § 1681c(g)(1), Congress gave consumers the legal right to obtain a receipt at the point of sale showing no more than the last five digits of the consumer's credit or debit card number. Appellants contend that Sam's Club invaded this right. Such is the "actual injury" alleged by the appellants. It is of no consequence that appellants' injury is dependent on the existence of a statute. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n.3 (1973) (emphasizing that the injury-in-fact requirement is satisfied "even though no injury would exist without the statute"). Thus, we conclude that appellants have alleged an injury-in-fact sufficient to confer Article III standing.

To be sure, Article III places meaningful limitations on the types of interests that Congress may define as judicially enforceable rights. First, the party seeking review must "be himself among the injured" in the sense that he alleges that defendants violated *his* statutory rights. *See Sierra Club v. Morton*, 405 U.S. 727, 735 (1972); *see also Steger v. Franco, Inc.*, 228 F.3d 889, 893 (8th Cir. 2000). Such is the case here. Appellants allege that it was their own receipts that contain numbers printed in violation of 15 U.S.C. § 1681c(g)(1). Second, "Congress may empower individuals to sue based only on 'personal and individual[ized]' injuries." *In re Carter*, 553 F.3d 979, 989 (6th Cir. 2009) (quoting *Lujan*, 504 U.S. at 560 n.1 (alteration in original)). Congress may not, for example, permit individuals to enforce "an abstract, self-contained, noninstrumental 'right' to have the Executive observe the procedures required by law." *Lujan*, 504 U.S. at 573. Again, this limitation poses no obstacle here. The FCRA liability provision states that "[a]ny person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable *to that consumer*." 15 U.S.C. § 1681n(a)(1)(A) (emphasis added). Hence, the liability provision does not authorize suits by members of the public at large, but creates a sufficient nexus between the individual plaintiff and the legal violation to avoid Article III concerns.

Because appellants allege that they have suffered an actual, individualized invasion of a statutory right, we conclude that they have satisfied the injury-in-fact requirement of Article III standing.

### ii.    *Redressability*

As to the question of whether the appellants have suffered an injury "that is likely to be redressed by a favorable decision," *Simon*, 426 U.S. at 38, we also answer in the affirmative.

Under FCRA's liability provision, a person who "willfully" fails to comply with FACTA is liable to the aggrieved consumer for "any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000."  15 U.S.C. § 1681n(a)(1)(A).

Referring to this provision in *Dowell v. Wells Fargo Bank, NA*, we stated as dicta:

> It does not necessarily follow from the cited language that statutory damages are available where a plaintiff fails to prove actual damages. A reasonable reading of the statute could still require proof of actual damages but simply substitute statutory rather than actual damages for the purpose of calculating the damage award.

517 F.3d at 1026.  For the reasons discussed below, we decline to follow the possible interpretation of the FCRA liability provision suggested in *Dowell* and instead conclude that the plain language of the provision permits recovery of statutory damages in the absence of actual damages.

The FCRA liability provision permits a consumer to recover "any actual damages . . . *or* damages of not less than $100 and not more than $1,000."  15 U.S.C.

§ 1681n(a)(1)(A) (emphasis added). Notably, Congress described these permissible damages in the disjunctive, which indicates that a consumer can bring a claim to recover statutory damages "of not less than $100 and not more than $1,000" as an alternative to a claim for actual damages. *See* 1A *Sutherland Statutes and Statutory Construction* § 21:14 (7th ed. 2009) ("The use of the disjunctive usually indicates alternatives and requires that those alternatives be treated separately."); *see also Charvat*, 725 F.3d at 823 ("Our Court . . . has held that plaintiffs need not show actual damages, beyond a statutory violation, in order to recover statutory damages."). We reject Sam's Club's invitation to foreclose statutory damages in the absence of actual damages when the language of the FCRA liability provision dictates otherwise.

Our reading is consistent with the purpose of FACTA's receipt requirement. Congress enacted FACTA "to prevent identity theft," Fair and Accurate Credit Transactions Act of 2003, Pub. L. No. 108-159, 117 Stat. 1952, and the restriction on printing more than the last five digits of a card number is specifically intended "to limit the number of opportunities for identity thieves to 'pick off' key card account information," S. Rep. No. 108-166, at 13 (2003). However, as a practical matter, when FACTA is violated, individual losses, if any, may be small. "That actual loss is small and hard to quantify is why statutes such as the Fair Credit Reporting Act provide for modest damages *without proof of injury*." *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) (emphasis added).

We also find support for our reading in the decisions of our sister circuits. *See, e.g.*, *Batemen v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 719 (9th Cir. 2010) ("Congress expressly created a statutory damages scheme that intended to compensate individuals for actual or potential damages resulting from FACTA violations, without requiring individuals to prove actual harm."); *Beaudry v. TeleCheck Servs., Inc.*, 579 F.3d 702, 705 (6th Cir. 2009) (explaining that "'actual damages' represent an alternative form of relief" under 15 U.S.C. § 1681n and that "the statute permits a recovery when there are no identifiable or measurable actual damages"); *Murray*, 434

-11-

F.3d at 953. In fact, we cannot locate a single case that interprets the FCRA liability provision as requiring something more than a statutory violation in order to recover "damages of not less than $100 and not more than $1,000."

By permitting a consumer to recover statutory damages under the FCRA liability provision, Congress did not require that consumers prove themselves actual victims of identity theft in order to bring a claim for violation of the FACTA truncation requirement. Therefore, we conclude that appellants' action against Sam's Club for violating FACTA's receipt requirement can be redressed in the absence of a claim for actual damages. *See Simon*, 426 U.S. at 38.

Finally, we note that a recent decision by the Ninth Circuit offers strong support for appellants' claim that they have Article III standing to bring their claim. *See Robins v. Spokeo, Inc.*, 742 F.3d 409, 413-14 (9th Cir. 2014) (holding that plaintiff satisfied the Article III standing requirements by alleging a violation of his statutory rights under the FCRA and seeking statutory damages under the FCRA liability provision without a showing of actual damages).

We conclude that appellants have satisfied the requirements of Article III standing.[4]

---

[4]The dissenting author asserts that we have "[i]gnor[ed] the last thirty-nine years of Article III standing jurisprudence" in holding that Hammer and White have Article III standing to bring their claim. In support, the author cites a score of cases in which the U.S. Supreme Court repeats the unremarkable proposition that a plaintiff must have suffered a concrete and particularized injury-in-fact in order to satisfy Article III standing. *See infra* dissent, Part I.A. But it bears repeating that to our knowledge, every federal circuit court of appeals to have addressed whether a plaintiff is permitted to recover statutory damages under the FCRA liability provision in the absence of actual damages has answered in the affirmative. Moreover, not one of these courts has concluded that the FCRA liability provision violates constitutional standing principles. Federal jurisprudence supports our holding with respect to

## B.     Willfulness under *Safeco*

We now turn to the merits.  As discussed, the district court concluded that Sam's Club violated FACTA's receipt requirement by printing more than the last five digits of appellants' credit card numbers on electronically printed receipts despite the fact that those numbers were labeled "member" numbers.  However, the district court dismissed appellants' action on summary judgment, holding that Sam's Club did not willfully violate the statute.  For the purposes of our analysis, we accept the district court's ruling that Sam's Club violated FACTA.  Nevertheless, we agree with the district court that the violation was not willful.

This court reviews a grant of summary judgment de novo, applying the same standard as the district court.  *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002).  "Summary judgment is appropriate when the evidence viewed in the light most favorable to the nonmoving party presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  *Coates v. Powell*, 639 F.3d 471, 475 (8th Cir. 2011).  Questions of law are "particularly appropriate for summary judgment."  *TeamBank, N.A. v. McClure*, 279 F.3d 614, 617 (8th Cir. 2002).

Appellants assert that the district court erred in several respects in concluding that Sam's Club did not willfully violate FACTA.  First, they argue that such judgment was inappropriate in light of the district court's prior conclusion that Sam's Club violated the "clear" and "unambiguous" language of FACTA's receipt requirement, 15 U.S.C. § 1681c(g)(1).  Second, appellants contend that the district court held them to an "impermissibly high standard of proof."  Finally, appellants argue that the district court inappropriately relied on disputed facts and considered the enormity of potential damages in granting a dismissal.  In contrast, Sam's Club

---

Article III standing.

-13-

argues that it did not act wilfully because its reading of the statute was objectively reasonable.

As we have already observed, a person who fails to comply with FACTA's receipt requirement does not incur liability for damages unless the violation is willful. 15 U.S.C. § 1681n(a)(1)(A). The Supreme Court has held that a violation becomes "willful" if it is either "knowing" or "reckless." *Safeco*, 551 U.S. at 57. A company acts in reckless disregard of FACTA when its "action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69. In essence, the central inquiry focuses on "objective reasonableness." *Fuges v. Sw. Fin. Servs., Ltd.*, 707 F.3d 241, 249 (3d Cir. 2012). Thus, even when a court disagrees with a party's interpretation of FACTA, it may not impose liability unless the party has interpreted the statute in an objectively unreasonable manner. *See Safeco*, 551 U.S. at 69 (concluding that Safeco's violation was not reckless because its "reading of the statute, albeit erroneous, was not objectively unreasonable").

In determining whether an interpretation is objectively unreasonable, we assess whether the reading "has a foundation in the statutory text" or whether the party interpreting the statute "had the benefit of guidance from the courts of appeals" or federal regulatory agencies "that might have warned it away from the view it took." *Id.* at 69-70. When a party has read the statute in an objectively reasonable manner, we need not consider facts relating to the party's subjective intent in assessing willfulness. *Id.* at 70, n.20.

Applying the analytical framework set forth in *Safeco*, we conclude that Sam's Club's interpretation of FACTA's receipt requirement as not applicable to the membership designation on the receipts did not amount to an objectively unreasonable reading of the statute. As we noted, FACTA provides:

-14-

> [N]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.

15 U.S.C. § 1681c(g)(1). Given this language, Sam's Club reasonably could have assumed that the statute only prohibits printing of more than the last five digits of the credit card number, *so labeled*. A literal-minded company executive could reasonably read the statute in this manner, even though such a reading may be contrary to the purposes of preventing identity theft or credit card fraud. We conclude that Sam's Club's reading of the statute "has a foundation in the statutory text," even though we acknowledge that the reading may be deemed erroneous under the law. *Safeco*, 551 U.S. at 69-70.

Our conclusion is bolstered by the lack of authoritative guidance available to Sam's Club. At the time this suit was filed in October 2008, no guidance had been rendered by appellate courts or regulatory agencies on the question of whether a "membership number," like a "credit card" or "account" number, must be shortened pursuant to the statute. To this court's knowledge, only one circuit decision has referenced the meaning of "card number" in the context of willfulness under FACTA. *See Van Straaten v. Shell Oil Prods. Co, LLC*, 678 F.3d 486 (7th Cir. 2012). In that case, the Seventh Circuit recognized the "absence of a statutory or regulatory definition of the phrase 'card number,'" but concluded that interpreting the term was unnecessary because the alleged FACTA violation was not willful. *Id.* at 489-91. And in any event, that decision came after appellants filed suit. Appellants also fail to identify any regulatory authority available to Sam's Club which demonstrated its printing of a customer's receipt containing a membership number that includes more than the last five digits of the customer's credit card number violated FACTA.

On a final note, we reject appellants' assertions that the district court committed various legal errors in its analysis of willfulness. To the contrary, the

-15-

record establishes that the district court correctly focused its inquiry on whether Sam's Club's reading of the statute was objectively reasonable in accordance with the standards set forth in *Safeco*.

We conclude that Sam's Club's interpretation of FACTA as not applicable to a membership number printed on a customer's receipt "has a foundation in the statutory text," *Safeco*, 551 U.S. at 69-70, and is therefore not objectively unreasonable.[5] Accordingly, we affirm the dismissal of appellants' action on the ground that Sam's Club's statutory violation was not willful.

## C. Denial of Appellants' Motion to Recuse

Finally, appellants argue that the district court judge erred in not recusing himself from the case on the ground that his son was an attorney in a law firm that represented General Electric (GE), the company that partners with Sam's Club in financing credit to certain Sam's Club customers. Appellants contend that the judge's failure to recuse violated 28 U.S.C. § 455(a) because an average person knowing the relevant facts surrounding the case would reasonably question the judge's impartiality based on his son's connection to GE.

---

[5] Having concluded that Sam's Club's interpretation of 15 U.S.C. § 1681c(g)(1) is objectively reasonable, we do not consider evidence in the record put forth by appellants that allegedly shows an intentional or bad faith violation of FACTA by Sam's Club. *See Safeco*, 551 U.S. at 70 n.20 (stating that evidence of subjective bad faith should not be taken into account "in determining whether a company acted knowingly or recklessly for purposes of § 1681n(a)" when the company's reading of the statute is objectively reasonable); *Levine v. World Fin. Network Nat'l Bank*, 554 F.3d 1314, 1319 (11th Cir. 2009) ("*Safeco* makes clear that evidence of subjective bad faith cannot support 'a willfulness finding . . . when the company's reading of the statute is objectively reasonable.'").

"The denial of a motion to recuse is reviewed for abuse of discretion." *United States v. Ruff*, 472 F.3d 1044, 1046 (8th Cir. 2007). A judge must recuse himself "in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Under section 455(a), this court considers "whether the judge's impartiality might reasonably be questioned by the average person on the street who knows all the relevant facts of a case." *In re Kan. Pub. Emp. Ret. Sys.*, 85 F.3d 1353, 1358 (8th Cir. 1996). Because a "judge is presumed to be impartial," a party seeking recusal "bears the substantial burden of proving otherwise." *United States v. Denton*, 434 F.3d 1104, 1111 (8th Cir. 2006) (citation omitted) (internal quotation marks omitted). A "relationship between a party and a judge's son or daughter does not *per se* necessitate a judge's disqualification. Rather, the determination of whether a conflict exists in a given situation is factually bound." *See In re Kan. Pub. Emp. Ret. Sys.*, 85 F.3d at 1364 (citations omitted).

We conclude that appellants have not satisfied their burden of showing that recusal was required under 28 U.S.C. § 455(a). While appellants allege that the judge became aware of the potential conflict with GE long before the judge disclosed it, appellants do not offer adequate support for this claim. The appellants do not point to anything in the district court's orders or the record that convincingly shows that the judge deliberately concealed a conflict from the parties. More importantly, the nature of the alleged conflict is "simply too remote, speculative, and contingent" to give rise to a situation in which the judge's impartiality might reasonably be questioned by a member of the public. *See In re Kan. Pub. Emp. Ret. Sys.*, 85 F.3d at 1362. The record does not show GE as a party to this lawsuit, and, as Sam's Club observes, there is little realistic possibility that it will become a party given that Sam's Club is the only company alleged to have provided appellants with a questioned electronically-printed receipt. Furthermore, appellants do not dispute Sam's Club's assertion that the judge's son is in no way involved in this case, and that no lawyer in that law firm has ever appeared in this case in any capacity. Appellants' counsel seems to be grasping at straws blowing in the wind in order to litigate this case further.

-17-

We conclude that the district court acted properly in denying appellants' motion to recuse.

## III.    Conclusion

For the foregoing reasons, we affirm.

RILEY, Chief Judge, dissenting.

Relying on an expansive reading of a single line in <u>Warth v. Seldin</u>, 422 U.S. 490, 500 (1975), the majority unnecessarily decides a difficult Article III standing question of first impression in our circuit, leading to an unsound ruling on the merits. I respectfully dissent.

## I.    STANDING

As the majority acknowledges, the plaintiffs in this case "do not allege *actual* damages." <u>Ante</u> at 5 (emphasis added). This putative "identity theft" case contains no trace of actual identity theft. The plaintiffs, Sam's Club shoppers Steven E. Hammer and Michael D. White (shoppers), do not allege the receipts containing their credit card information were ever at risk of exposure to would-be identity thieves. Until this lawsuit, the receipts apparently never left the shoppers' possessions, and now the receipts are safely ensconced in the sealed record. Even if credit card information listed on secured receipts could somehow cause anxiety, there is no allegation the shoppers suffered so much as a sleepless night or any other psychological harm. Unlike the failed plaintiffs in <u>Clapper v. Amnesty International USA</u>, 568 U.S. ___, ___, 133 S. Ct. 1138, 1146 (2013) (internal quotation omitted), the shoppers do not even claim to "have undertaken costly and burdensome measures to protect" themselves from the risk they supposedly face. The shoppers most assuredly lack Article III standing.

-18-

## A. Injury in Fact

The shoppers' only basis for appearing in federal court, the majority recognizes, is a harmless statutory violation: "Sam's Club invaded" the shoppers' "legal right to obtain a receipt at the point of sale showing no more than the last five digits of the consumer's credit or debit card number." Ante at 9. To be sure, this invasion of a statutory right is an injury *in law*. But it is far from "well established," as the majority asserts, id., that this trivial statutory violation is an injury *in fact*. The shoppers have suffered injury without damage, "[a] legal wrong" which ordinarily "will not sustain a lawsuit because *no harm resulted* from it." See Black's Law Dictionary 856 (9th ed. 2009) (defining *injuria absque damno*) (emphasis added). "It is a longstanding principle in civil law that there can be no monetary recovery unless the plaintiff has suffered harm." Mira v. Nuclear Measurements Corp., 107 F.3d 466, 473 (7th Cir. 1997); see also, e.g., Pierce v. Ramsey Winch Co., 753 F.2d 416, 435 (5th Cir. 1985) ("[I]njury without damage creates no right to compensation."). By requiring injury *in fact*, the Supreme Court recognizes that Article III incorporates this traditional principle:

**An interest unrelated to injury in fact is insufficient to give a plaintiff standing.**

Vt. Agency of Natural Res. v. U.S. ex rel. Stevens, 529 U.S. 765, 772 (2000) (emphasis added).

Ignoring the last thirty-nine years of Article III standing jurisprudence, the majority adopts an extraordinarily broad reading of the Supreme Court's 1975 dictum in Warth that "'[t]he actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing.'"

-19-

<u>Ante</u> at 8 (quoting <u>Warth</u>, 422 U.S. at 500). The Supreme Court has never actually *held* an unharmed plaintiff had standing by virtue of a bare statutory violation.[6]

The majority justifies its adoption of this theory that "the actual-injury requirement may be satisfied *solely* by the invasion of a legal right that Congress *created*" on the basis that this theory "is not a novel [one] within the law of standing." <u>Ante</u> at 8 (footnote omitted). This aged theory is even less novel than the majority suggests. Riding circuit, Justice Joseph Story wrote in 1838, "Actual, perceptible damage is not indispensable as the foundation of an action. The law tolerates no farther inquiry than whether there has been the violation of a right." <u>Webb v. Portland Mfg. Co.</u>, 29 F. Cas. 506, 508 (D. Me. 1838) (No. 17,322).

Since Justice Story decided <u>Webb</u> in 1838 and Justice Powell authored <u>Warth</u> in 1975, the standing doctrine has become more protective of the judicial branch's limited role in our tripartite system of government.[7] Gone are the days when the

---

[6]In <u>Massachusetts v. EPA</u>, 549 U.S. 497 (2007), for example, the Supreme Court conspicuously relied on the *harm* Massachusetts was *in fact* suffering, not on the bare statutory violation of which Massachusetts complained, as the basis for finding an injury in fact: "Because the Commonwealth owns a substantial portion of the state's coastal property" and "rising seas have already begun to swallow Massachusetts' coastal land," "[Massachusetts] has alleged a particularized injury in its capacity as a landowner." <u>Id.</u> at 522 (internal quotation omitted).

[7]In <u>Raines v. Byrd</u>, 521 U.S. 811 (1997), for example, the Supreme Court explained:

> "[T]he law of Art. III standing is built on a single basic idea—the idea of separation of powers." In the light of this overriding and time-honored concern about keeping the Judiciary's power within its proper constitutional sphere, we must put aside the natural urge to proceed directly to the merits of this important dispute and to "settle" it for the sake of convenience and efficiency. Instead, we must carefully inquire as to whether appellees have met their burden of establishing that their

-20-

federal courthouse door was rarely closed to plaintiffs, no matter how attenuated or speculative their supposed injury.  See, e.g., Lewis v. Casey, 518 U.S. 343, 353 n.3 (1996) ("This would perhaps have seemed like good law at the time of Flast[ v. Cohen, 392 U.S. 83 (1968)], but our later opinions have made it explicitly clear that Flast erred in assuming that assurance of 'serious and adversarial treatment' was the only value protected by standing.").

In recent years, the Supreme Court has strongly suggested that to have a *case* under Article III, a plaintiff must have suffered not only the violation of a legal right (the "injury" of "injury in fact"), but also a factual harm (the "in fact").  See, e.g., Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. ___, ___, 134 S. Ct. 1377, 1386 (2014) ("The plaintiff must have suffered or be imminently threatened with a concrete and particularized 'injury in fact.'"); Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, ___, 130 S. Ct. 2743, 2755 (2010) ("Such *harms* . . . are sufficiently concrete to satisfy the injury-in-fact prong of the constitutional standing analysis." (emphasis added)); Vermont Agency, 529 U.S. at 771 (defining "injury in fact" as "a *harm* that is both 'concrete' and 'actual or imminent, not conjectural or hypothetical'" (emphasis added) (quoting Whitmore v. Arkansas, 495 U.S. 149, 155 (1990))); Fed. Election Comm'n v. Akins, 524 U.S. 11, 24 (1998) ("[W]here a *harm* is concrete, though widely shared, the Court has found 'injury in fact.'" (emphasis added)).

Notably, in Lujan v. Defenders of Wildlife, 504 U.S. 555, 578 (1992), the Supreme Court read Warth narrowly, explaining Congress' power to create standing by statute is limited to "elevating to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law."  De facto means "actual;

claimed injury is personal, particularized, concrete, and otherwise judicially cognizable.

Id. at 820 (footnote omitted) (quoting Allen v. Wright, 468 U.S. 737, 752 (1984)).

existing *in fact*." Black's Law Dictionary, supra, at 479 (emphasis added). According to Lujan, Warth's dictum stands for the limited and uncontroversial proposition that Congress can, through statute, create a *legal* remedy for a *factual* harm. If there is damage without injury, an act of Congress can generate an Article III case where otherwise there would be none. See Lujan, 504 U.S. at 578. For example, Congress can assign a statutory value to the harm a person experiences from living in a racially segregated community or a private company faces from competing against a government-owned company. See Trafficante v. Metro. Life Ins. Co., 409 U.S. 205, 208-12 (1972); Hardin v. Ky. Utils. Co., 390 U.S. 1, 6 (1968).

Whether Congress can create justiciable injuries where there is no real harm presents an extremely difficult constitutional question. See Wallace v. ConAgra Foods, Inc., ___ F.3d ___, ___, No. 13-1485, 2014 WL 1356860, at *5-6 (8th Cir. Apr. 4, 2014). It is a question the Supreme Court has never answered, and—until today—neither had our court.[8] In fact, our court recently recognized the question's difficulty in Wallace and declined to answer based on statutory grounds and the canon of constitutional avoidance.[9] See id. And in 2012, the Supreme Court granted

_____

[8]Despite the majority's citation, ante at 8, of Charvat v. Mut. First Fed. Credit Union, 725 F.3d 819, 822 (8th Cir. 2013), that case neither decided the question nor supports the majority's answer. In Charvat, our court did no more than follow the settled principle that a factual "informational injury" constitutes injury in fact pursuant to a statute providing redress for this real harm. Id. at 823; see, e.g., Akins, 524 U.S. at 21. Dryden v. Lou Budke's Arrow Fin. Co., 630 F.2d 641 (8th Cir. 1980), is a similar informational injury case involving a defendant who actually harmed the plaintiff by providing incorrect or incomplete information. See id. at 643-44, 647. Contradicting the majority's standing analysis, Charvat recognized, "Because injury in fact is a constitutional requirement, Congress may not grant standing to an individual *who would not otherwise have standing*." Charvat, 725 F.3d at 822 (emphasis added).

[9]"The canon is not a method of adjudicating constitutional questions by other means," Clark v. Martinez, 543 U.S. 371, 381 (2005), so Wallace does not preclude

certiorari and heard argument on this precise question in <u>First American Financial Corp. v. Edwards</u>, 567 U.S. ___, ___, 132 S. Ct. 2536, 2537 (2012) (per curiam), yet ultimately dismissed the writ as improvidently granted, evidently because the case did not involve a purely legal injury.[10]

Although the justices did not issue a decision in <u>First American</u>, their questions at argument reveal the difficulty of the standing issue raised in both <u>First American</u> and this case. Regarding an argument that "violation of a statute is injury in fact," Chief Justice Roberts said:

> I would have thought that would be called injury *in law*. And when we say, as all our standing cases have, . . . that what is required is injury *in fact*, I understand that to be in contradistinction to injury *in law*. And when you tell me all that you've got or all that you want to plead is violation of the statute, *that doesn't sound like injury in fact*.

---

the majority from answering this constitutional question today (although <u>Wallace</u>'s logic counsels against doing so). By the same token, however, the majority's constitutional ruling today cannot affect our court's statutory interpretation in <u>Wallace</u>, ___ F.3d at ___, 2014 WL 1356860, at *6. <u>See</u> <u>Clark</u>, 543 U.S. at 382 (refusing to "render every statute a chameleon, its meaning subject to change depending on the presence or absence of constitutional concerns in each individual case"); <u>see also</u> <u>Mader v. United States</u>, 654 F.3d 794, 800 (8th Cir. 2011) (en banc) (stating we are bound by the decisions of prior panels).

[10]The Supreme Court seems to have discovered at argument that the case turned on a factual dispute about whether a particular harm was an injury in fact, rather than on the legal question whether Congress could create an injury in fact without actual harm. Chief Justice Roberts said at argument, "[I]f you tell me what this case is about is whether or not you've shown injury in fact, it's not a . . . significant case, and your client has to prove that at trial." Oral Argument at 34:02, <u>First Am.</u>, 567 U.S. at ___, 132 S. Ct. at 2537 (No. 10-708), <u>available</u> <u>at</u> http://www.oyez.org/cases/2010-2019/2011/2011_10_708.

-23-

Oral Argument at 32:25, First Am., 567 U.S. at ___, 132 S. Ct. at 2537 (emphasis added). Responding to an argument—paralleled by one advanced by the shoppers and accepted by the majority, ante at 9—that the plaintiff was injured by being "denied something he [wa]s entitled to" (there, "another expert's untainted referral"; here, a receipt with no more than five printed digits), Justice Kennedy remarked:

> [I]t's circular for you to say he was denied something that he is entitled to. The question is whether there is an injury. The Constitution requires an injury. . . . If you were to say he was entitled to it and therefore, there is an injury, that's just—that's just circular.

Id. at 44:54.

If the majority is correct, the federal courts will find themselves deciding strange "cases" indeed. Without any factual limits on its ability to create statutory injuries, Congress could transform the courts into implementers of majoritarian economic and social policies (the proper role of the elected branches) rather than bulwarks against majoritarian excess.[11] See, e.g., Clapper, 568 U.S. at ___, 133 S. Ct. at 1146 ("The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches."). Congress would be able to give one's neighbor, co-worker, or political adversary the right to sue if one fails to live the way the majority in Congress thinks one should.[12] I question whether the Supreme Court's carefully

---

[11]As then-Judge Scalia put it, "[T]he law of standing roughly restricts courts to their traditional undemocratic role of protecting individuals and minorities against impositions of the majority, and excludes them from the even more undemocratic role of prescribing how the other two branches should function in order to serve the interest *of the majority itself*." Antonin Scalia, The Doctrine of Standing as an Essential Element of the Separation of Powers, 17 Suffolk U.L. Rev. 881, 894 (1983).

[12]Under the majority's theory, the shoppers have standing solely because "Congress gave consumers the legal right to obtain a receipt at the point of sale

crafted injury *in fact* jurisprudence can be so easily circumvented by Congress.  See, e.g., Summers v. Earth Island Inst., 555 U.S. 488, 497 (2009) ("[T]he requirement of injury in fact is a hard floor of Article III jurisdiction that *cannot be removed by statute*." (emphasis added)).

## B.     Constitutional Avoidance

In any event, I see no reason to decide such a complex constitutional question in this case.  It is a bedrock rule, "repeatedly affirmed" and "'beyond debate,'" that federal courts must avoid deciding "'grave and doubtful constitutional questions'" whenever possible by adopting a reasonable alternative interpretation of a potentially suspect statute.  Jones v. United States, 526 U.S. 227, 239-40 (1999) (quoting Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council, 485 U.S. 568, 575 (1988), and U.S. ex rel. Attorney Gen. v. Del. & Hudson Co., 213 U.S. 366, 408 (1909)); see also, e.g., Ashwander v. TVA, 297 U.S. 288, 345-48 (1936) (Brandeis, J., concurring); Union Pac. R.R. Co. v. DHS, 738 F.3d 885, 892-93 (8th Cir. 2013).  "Rather than confronting the difficult constitutional question whether Congress can drill through th[e] hard floor of injury *in fact* by creating an injury *in law* (i.e., a statutory cause of action requiring no showing the plaintiff was personally and actually harmed)," I would "'follow th[is] traditional rule.'"  Wallace, ___ F.3d at ___, 2014 WL 1356860, at *6 (footnote omitted) (quoting Union Pacific, 738 F.3d at 893).

The statute at issue here is open to the eminently reasonable interpretation offered in a prior panel opinion joined by one member of today's majority:

> This language [in 15 U.S.C. § 1681n(a)(1)(A)] clearly provides that an award of statutory damages is available as an alternative to an award of

_____

showing no more than the last five digits of the consumer's credit or debit card number."  Ante at 9.  This theory lacks any internal limiting principle, reducing Article III standing to a nullity.

actual damages. The plaintiffs argue the district court overlooked this fact and summary judgment was, therefore, inappropriate. We disagree. It does not necessarily follow from the cited language that statutory damages are available where a plaintiff fails to prove actual damages. *A reasonable reading of the statute could still require proof of actual damages but simply substitute statutory rather than actual damages for the purpose of calculating the damage award.*

Dowell v. Wells Fargo Bank, NA, 517 F.3d 1024, 1026 (8th Cir. 2008) (per curiam).

Rather than rejecting the Dowell panel's reasonable analysis as the majority does, I would follow Dowell's interpretation of § 1681n(a)(1)(A). Instead of offering a doubtful answer to a difficult constitutional question, I would resolve this case on the settled and unexceptional ground that the shoppers lack Article III standing unless success on the merits is likely to provide redress. See Lujan, 504 U.S. at 561. Under Dowell's reading of the statute, the shoppers have no hope of redress without some sort of actual (though not necessarily economic) harm. Because the shoppers failed to allege actual harm, they lack Article III standing.[13] See id.

---

[13]The majority's reliance on Robins v. Spokeo, Inc., 742 F.3d 409, 412-13 (9th Cir. 2014), see ante at 12, is misplaced because Robins did not present the Ninth Circuit with a difficult constitutional question that could be avoided by adopting an alternative reading of § 1681n(a)(1)(A). Whether a bare statutory violation gives rise to an injury in fact was not an open question for the Ninth Circuit. See Edwards v. First Am. Corp., 610 F.3d 514, 517 (9th Cir. 2010). But it is an open question for our circuit in this case, and "the hallowed rules of constitutional avoidance" preclude us from answering this difficult question without necessity. Union Pacific, 738 F.3d at 900; see also, e.g., Clark, 543 U.S. at 381.

Equally misplaced is the majority's reliance on the fact that other circuits—without expressly considering constitutional standing—have "permitted [plaintiffs] to recover statutory damages under [§ 1681n(a)(1)(A)] in the absence of actual damages." Ante at 12 n.4. Because constitutional standing "was not argued or decided in these cases, . . . it is axiomatic that they provide absolutely no support

By rejecting <u>Dowell</u>, the majority embraces the shoppers' reading of § 1681n(a)(1)(A), which will lead to results Congress cannot have intended. According to the shoppers, the stores are liable for billions of dollars in statutory damages without any evidence the shoppers, and the class they wish to represent, were harmed at all. From small to large retailers, the shoppers' interpretation could easily result in bankruptcy. A retailer earning less than $100 per average receipt could not afford a $100 penalty per receipt, let alone $1,000. The district court took the fact that damages "would exceed $1 billion despite the absence of a penny's worth of injury," as a sign "that Congress probably knew not what they wrought." (Internal quotations omitted).

But in writing a statute, Congress need not restate what is already obvious from the Constitution and the federal courts' constitutional jurisprudence. "Congress is 'predominantly a lawyer's body,' and it is appropriate for [the courts] 'to assume that [the people's] elected representatives . . . know the law.'" <u>Albernaz v. United States</u>, 450 U.S. 333, 341 (1981) (quoting <u>Cannon v. Univ. of Chi.</u>, 441 U.S. 677, 696-97 (1979), and <u>Callanan v. United States</u>, 364 U.S. 587, 594 (1961)). "Congress legislates against the background of . . . standing." <u>Bennett v. Spear</u>, 520 U.S. 154, 163 (1997).[14] Congress presumably expected the federal courts to require factual

_____

for the" majority's "position." <u>United States v. Bruguier</u>, 735 F.3d 754, 763 (8th Cir. 2013) (en banc). "'Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.'" <u>Cooper Indus., Inc. v. Aviall Servs., Inc.</u>, 543 U.S. 157, 170 (2004) (quoting <u>Webster v. Fall</u>, 266 U.S. 507, 511 (1925)). And even if these other cases did constitute precedent on the constitutional standing issue, which they do not, our court would remain independently bound to follow the Supreme Court and avoid offering unnecessary answers to difficult constitutional questions.

[14]Though the Supreme Court in <u>Bennett</u> focused on prudential standing, <u>see</u> 520 U.S. at 163, Article III places even clearer limits on Congress' ability to create civil remedies, <u>see</u>, <u>e.g.</u>, <u>Ass'n of Data Processing Serv. Orgs., Inc. v. Camp</u>, 397 U.S.

harm under Article III's injury in fact prong. It makes sense that Congress intended § 1681n(a)(1)(A) to permit consumers suffering real harm from a retailer's failure to truncate credit card numbers to recover statutory damages even if actual damages were minimal or difficult to quantify. But it does not make sense to assume Congress intended to confer a windfall on consumers—like the shoppers in this case—who face no reasonable likelihood of harm, let alone any actual harm. These shoppers' secured receipts could not possibly lead to the identity theft Congress wanted the FACTA to prevent. In this context, our court should not presume the people's elected legislators "knew not what they wrought" or intended potentially to bankrupt retailers of all sizes and descriptions in the absence of any harm.

The canon of constitutional avoidance "is a tool for choosing between competing *plausible* interpretations of a statutory text, resting on the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts. The canon is thus a means of giving effect to congressional intent, not subverting it." Clark, 543 U.S. at 381-82 (emphasis added) (citations omitted). The government, intervening in support of the shoppers' theory that injury in law equals injury in fact, concedes that the Dowell panel's interpretation "is plausible." That should be the end of this appeal.[15]

---

150, 154 (1970).

[15]My analysis of Article III standing and constitutional avoidance leads me to dissent rather than concur in the judgment. Unlike the majority, which *affirms* the district court's grant of summary judgment under Rule 56(a) and prejudicial entry of *judgment* in favor of Sam's Club, I would *vacate* the district court's rulings and *remand* with instructions to *dismiss* the case without prejudice. This procedure is the appropriate course when a district court enters judgment in a case in which it lacks jurisdiction. See, e.g., Burton v. Stewart, 549 U.S. 147, 149 (2007) (per curiam); Rosebud Sioux Tribe v. McDivitt, 286 F.3d 1031, 1035 (8th Cir. 2002).

## II.  MERITS

Setting aside the majority's precarious constitutional theory, I fear the majority's resolution of the merits strays from the unambiguous statutory text. Misreading the remedy provision applicable to the shoppers' FACTA claims, § 1681n(a)(1)(A), to confer standing in the absence of actual harm leads the majority to an unpleasant choice: either (1) follow the plain text of FACTA, 15 U.S.C. § 1681c(g)(1), and authorize unharmed Sam's Club credit-cardholders to recover disproportionate damages, or (2) misread other parts of FACTA to preclude such damages *even for those who are harmed*.  By taking the second path, the majority thwarts clear congressional intent and makes it impossible for truly harmed cardholders to recover the statutory damages to which they should be entitled.  In accordance with well-established principles of statutory construction, I would instead follow the clear and unambiguous text of § 1681c(g)(1), giving effect to Congress' plainly expressed intent to provide a remedy for any cardholders who suffered real harm.

### A.  Statutory Text

All questions of statutory construction begin with the same first step: a reading of the statute.  See, e.g., Hawaii v. Office of Hawaiian Affairs, 556 U.S. 163, 173 (2009).  When the text of the statute is clear, this first step "is also the last: 'judicial inquiry is complete.'"  Conn. Nat'l Bank v. Germain, 503 U.S. 249, 254 (1992) (quoting Rubin v. United States, 449 U.S. 424, 430 (1981)).  The text at issue provides:

> [N]o person that accepts credit cards or debit cards for the transaction of business shall print *more than the last 5 digits* of the card number or the expiration date *upon any receipt* provided to the cardholder at the point of the sale or transaction.

15 U.S.C. § 1681c(g)(1) (emphasis added).  This prohibition only applies "to receipts that are electronically printed," not "transactions in which the sole means of recording

a credit card or debit card account number is by handwriting or by an imprint or copy of the card." Id. § 1681c(g)(2).

Congress could hardly have spoken more plainly. Only five—the last five—*digits* of any credit or debit card number may be printed anywhere on any electronically printed receipt. This is true whether the digits are labeled "credit card number," "Account #," "Member," or not labeled at all. Had Congress intended labels to matter, Congress could easily have said so (e.g., "more than the last 5 digits of the card number *so labeled*"). Instead, Congress spoke in unequivocal terms, presumably saying just what it meant and meaning exactly what it said. See Conn. Nat'l Bank, 503 U.S. at 254. Our court's sole task, then, is to enforce the plain statutory language of § 1681c(g) "according to its terms." Jimenez v. Quarterman, 555 U.S. 113, 118 (2009). By printing "more than the last 5 digits of the card number" on "any receipt" "electronically printed," Sam's Club plainly violated § 1681c(g).

## B. Objective Reasonableness

Because the statute unambiguously prohibits printing too many *digits* of the number, regardless of labeling, it was not objectively reasonable for Sam's Club to read a labeling requirement into the statute. See, e.g., Alabama v. North Carolina, 560 U.S. 330, 352 (2010) ("We do not—we cannot—add provisions to a federal statute.").

In Safeco Insurance Company of America v. Burr, 551 U.S. 47 (2007), the Supreme Court established two points of law relevant to this appeal: (1) a "willful" violation of the FACTA includes a "reckless disregard" of its requirements, and (2) a violation premised on an "objectively reasonable" reading of the FACTA cannot be "reckless." Id. at 52, 69, 70 n.20. To be objectively reasonable, a reading must have "a foundation in the statutory text." Id. at 69-70. If that text is "less-than-pellucid,"

the absence of authoritative guidance may also affect the reasonableness analysis.[16] Id. at 70. But a reading which is inconsistent with the pellucid text of the statute, unsupported by any authoritative guidance, and at odds with the obvious purpose of the statute, is objectively unreasonable. See id. at 69-70. Sam's Club's imaginative reading falls squarely into this category. According to Sam's Club, all manner of identifying information—indeed, every single letter and number on a credit card, including the holder's name, the account number, the security code, and the expiration date—could be printed on a receipt so long as the information was mislabeled or not labeled at all. Not so, according to the plain text of the statute. No reasonable reader of the statute, even the majority's "literal-minded company executive," ante at 15, could think otherwise.

Sam's Club strains to direct the court's focus to the term "card number," insisting a "membership number" cannot be a "card number," in order to distract from the decisive term: "5 digits." Perhaps the term "card number" in the abstract is open to multiple reasonable interpretations, but the statute does not prohibit printing card numbers; it prohibits printing *digits* of a card number. What matters is (1) how many of the digits are printed on the receipt, and (2) whether those digits make up some sequential part of the card number. As the Seventh Circuit explained, "we need not essay a definition of 'card number' as an original matter, because we can't see why anyone should *care* how the term is defined. A precise definition does not matter as long as the receipt contains too few *digits* to allow identity theft." Van Straaten v. Shell Oil Prods. Co., 678 F.3d 486, 488 (7th Cir. 2012) (second emphasis added).

---

[16]The majority today turns Safeco on its head by giving Sam's Club the benefit of missing authoritative guidance even though the statutory text is *not* "less-than-pellucid," Safeco, 551 U.S. at 70. See ante at 14-15. Here, the absence of guidance supporting the stores' reading should cut the other way because it means Sam's Club's reading has no foundation in the unambiguous statutory text *or* in any extra-statutory guidance.

The stores printed every single digit required for identity theft, a practice no reasonable reading of FACTA would allow.

### C. Willfulness

Because the stores' reading was not objectively reasonable, it is a fact question whether the stores' violation was willful, and the shoppers (with standing bestowed by the majority) have presented more than enough evidence to submit this question to a jury. See Fed. R. Civ. P. 56(a).

As early as 2004, one of Sam's Club's fraud experts warned that membership and credit numbers should differ because "the way membership is handled—well, *including on printing on receipts, is less secure* than how a credit card number would be handled." Yet Sam's Club failed to mitigate this admittedly "unnecessary risk" despite numerous warnings. In 2005, an internal security unit issued a report addressing "top-level issues" "where customer and associate personal information could be compromised intentionally or otherwise." The first "top-level issue": "Membership numbers are not handled in a manner that would minimize the possibility of the account number being compromised." The report warned:

> An individual able to obtain *a membership number and a member name* has adequate information to engage in a confidence scheme. The most likely scenario would be one where an individual would attempt to obtain a duplicate card on the compromised account. The subject could then *use a previously available credit line* or attempt to open a new credit line on a member[']s account.

(Emphasis added). To counter this significant risk, the report recommended "obscur[ing]" *all* membership numbers—not simply those duplicated in credit card numbers—"on both sales and refund receipts."

Yet, as the shoppers discovered several years later when they made purchases using their membership/credit cards at two different Sam's Club stores, Sam's Club ignored these internal warnings. Instead, both shoppers received receipts listing their names and membership numbers (i.e., all eleven unique digits of their credit numbers)—precisely the information required, according to Sam's Club's internal security unit, to "use a previously available credit line or attempt to open a new [one]."

In late October 2008, one week after the shoppers commenced this case, a Wal-Mart employee sent an e-mail to senior point-of-sale personnel with the subject "We got trouble, right here in Member City," warning of a "*terrific and terrible* emergency." (Emphasis added). The e-mail explained that using the member number to generate the card number was "not good [because] there's now a federal law stating that we can only print the last four [sic] *digits* of any account number on the receipt." (Emphasis added). Printing too many digits, the e-mail said, resulted in "a dangerous situation." As a remedy, the e-mail recommended "reissuing the [membership/credit] cards with a random non-derived account number . . . *immediately, if not sooner*," because "we do not consider these cards secure until this is completed." (Emphasis added). Of course, Sam's Club cannot be faulted for failing to achieve the impossible task of acting sooner than immediately, but the retailer deliberately waited more than three months to improve security, continuing to print each unique digit required for identity theft out of a desire to avoid disrupting profitable holiday sales.

Based on this evidence, a reasonable jury could easily find Sam's Club acted in "reckless disregard of statutory duty," Safeco, 551 U.S. at 57, running "'an unjustifiably high risk of harm that [was] either known or so obvious that it should [have] be[en] known,'" id. at 68 (quoting Farmer v. Brennan, 511 U.S. 825, 836 (1994)).

## III.  CONCLUSION

Mindful of the judiciary's limited role under Article III, I cannot join the majority's unnecessary resolution of a difficult constitutional question.  Relying on <u>Dowell</u>, I would vacate the district court's judgment and remand with instructions to dismiss for lack of Article III standing.  If it were necessary to reach the merits, I would reverse the judgment because (if the shoppers have standing) this case presents a jury question.[17]

————————————————

[17]I agree the district court did not abuse its discretion by denying the shoppers' motion to recuse.